## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**DENNIS DARRYL GRACE AND
CLAY JOHNSON,**

      **Plaintiffs,**

**vs.**                           **CASE NO. 6:07-cv-1324-ORL-28-GJK**

**DRS TECHNOLOGIES, INC, and
DRS SENSORS & TARGETING SYSTEMS, INC,**

      **Defendants.**

_____/

### THIRD AMENDED COMPLAINT;  DEMAND FOR JURY TRIAL

_____Come now Plaintiffs, through undersigned Counsel;  and, pursuant to this Court's Order,

file this Third Amended Complaint and state:

### Count I.  Mr. Grace's Claim of Racial Discrimination in the
### Making and Enforcement of Contracts
### 42 U.S.C. § 1981

1.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has subject matter

jurisdiction over this action because of the federal civil rights law violations alleged in this

Count.

2.     Venue is proper in this Court because the violations of law alleged herein

occurred in Brevard County, Florida.

3.     Plaintiff, Dennis Darryl Grace, is a black African-American man residing in

Brevard County, Florida.

4.     Plaintiff, Clay Johnson, is a man of dark color and of Trinidadian origin, ancestry,

and ethnicity (herein collectively referred to as Mr. Johnson's "race"); and, is a resident of

Brevard County, Florida.

5.      Defendant, DRS Technologies, Inc.,(hereinafter "DRS"), is a foreign corporation headquartered in New Jersey.  DRS is being sued only in Counts XVII through XX of this Third Amended Complaint.

6.      Defendant, DRS Sensors & Targeting Systems, Inc.,(hereinafter "STS), is a corporation with offices in Brevard County, Florida.  At all times relevant, STS has been a subsidiary or division of DRS.  STS is being sued in all Counts of this Third Amended Complaint.

7.      Mr. Grace was employed by STS from 2000 until August 28, 2008, in information technology and related fields.

8.      Beginning in late 2001, through at least September, 2008, STS took materially adverse employment actions against Mr. Grace because of his race.

9.      On or about late 2001, STS offered company cell phones to Mr. Grace's similarly situated white co-workers in the Information Technology (IT) department, but told Mr. Grace to use his personal cell phone to troubleshoot network problems.

10.      On or about June, 2002, STS refused to pursue action to obtain a security clearance for Mr. Grace, although STS did so for similarly situated white employees.

11.      On or about November, 2004, STS denied Mr. Grace the opportunity to attend the Professional Development Program (PDP), although STS did not refuse similarly situated white employees.

12.      On or about July 8, 2005, STS denied Mr. Grace promotion to the position of IT Supervisor.  Instead, STS promoted Dave Marsden, a white man less qualified than Mr. Grace, into that position.

13.      On or about July 8, 2005, STS denied Mr. Grace promotion to the position of Facility Security Supervisor.  Instead, STS promoted Herman "Bill" Ryan, a white man less qualified than Mr. Grace, into that position.

2

14A.    On or about February, 2004, STS denied Mr. Grace training for Oracle, even though that training would have permitted Mr. Grace to perform his job more effectively.  STS did not deny Mr. Grace's similarly situated white coworkers such training, and even though STS required Mr. Grace to perform Oracle operations that Oracle itself said that only people with the Oracle training should perform.

14B.    On or about November, 2005, STS denied Mr. Grace training for PDP, even though that training would have permitted Mr. Grace to perform his job more effectively.  STS did not deny Mr. Grace's similarly situated white coworkers such training.

15.    On or about February 16, 2006, STS was discovered to have been scrutinizing every one of Mr. Grace's computer keystrokes by secretly installing key logging software on Mr. Grace's work computer.  STS did not scrutinize Mr. Grace's similarly situated white coworkers nearly so closely.

16.    Beginning on or about March, 2006, STS suddenly reversed its long-standing practice and refused to provide Mr. Grace with a modified schedule so that Mr. Grace could attend college courses.  STS did not deny Mr. Grace's similarly situated white coworkers such scheduling flexibility.

17.    On or about July, 2006, STS denied Mr. Grace permission to take the Notre Dame University Negotiations course, even though the course was online and would have been taken on his own time.  STS did not deny such permission to Mr. Grace's similarly situated white coworkers.

18.    On or about April, 2007, STS reduced Mr. Grace's job performance rating without just cause, in order to harass and retaliate against Mr. Grace.

19.    On or about October, 2007, STS set up Mr. Grace to fail by refusing to provide Mr. Grace a job analysis after STS gave him a new job description.

20.    On or about November, 2007, STS set up Mr. Grace to fail by refusing to provide him with proper direction, and by giving him subsequent misdirection, for archiving the company data.

21.    On or about April 2008, STS assigned Mr. Grace to support the servers in the Dallas office, but refused him the domain administration rights necessary to do so effectively.

22.    On or about April 23, 2008, STS imposed disciplinary action on Mr. Grace for the "Alabama" Intranet server outage for which Mr. Grace was not responsible;  and, STS did not discipline the white people who actually bore the responsibility.

23.    On or about August 14, 2008, STS suspended Mr. Grace when he produced in discovery in this case a computer disc that he had just discovered had been inadvertently mixed in with other such discs and taken home by him.

24.    On August 28, 2008, STS fired Mr. Grace.

25.    Beginning August 14, 2008, and continuing through at least late September, 2008, STS has kept Mr. Grace's personal property that he had located in his workspace at STS.

26.    In relation to similarly situated white people, STS has subjected Mr. Grace to disparate treatment and severe and pervasive harassment, including surreptitious and closer scrutiny, harsher discipline, more onerous standards, withdrawal of resources and support, fewer perquisites and privileges, ostracism and marginalization, disrespect, and a substantially more hostile working environment, because of Mr. Grace's race.

27.    Under Section 1981, Mr. Grace has the right to make and enforce contracts -- which includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people.

28.    By committing the actions alleged in Paragraphs 8 through 9 above, STS denied Mr. Grace the same right to make and enforce employment contracts -- which includes the making, performance, modification, and termination of contracts, and the enjoyment of all

4

benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people, because of Mr. Grace's race.

29.     In discriminating against Mr. Grace because of his race, STS acted with malice or callous indifference to Mr. Grace's federally protected rights.

30.     Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

31.     Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

### Count II.  Mr. Johnson's Claim of Racial Discrimination in the Making and Enforcement of Contracts
#### 42 U.S.C. § 1981

32.     Mr. Johnson realleges Paragraphs 1 through 6, and states additionally:

33.     Mr. Johnson was employed by STS from 2000 until August 28, 2008, in information technology and related fields.

34.     Beginning in 2000 through at least late September, 2008, STS took materially adverse employment actions against Mr. Johnson because of his race.

35.     STS denied Mr. Johnson compensation for performing supervisory and managerial duties and responsibilities from 2000 through May 6, 2008.  STS did not fail or refuse to so compensate Mr. Johnson's white coworkers performing such tasks.

36.     During 2000 and 2001, many times STS Manager Paka Antle laughingly referred in the presence of Mr. Johnson to Craig Jensen, whose arm had a physical deformity, as "Chicken Wing," even though Mr. Johnson make it known to Mr. Antle that the reference made Mr. Johnson feel uncomfortable.

37.     From on or about May, 2001, through May, 2006, Mr. Antle made claims of interpersonal communication/communications deficiencies on Mr. Johnson's performance

5

evaluations, but when Mr. Johnson asked Mr. Antle to provide supporting documentation or to give examples regarding the supposed problem(s), neither Mr. Antle nor anyone at STS ever did so.

38.     In August, 2001, STS refused to uphold the agreement STS made with Mr. Johnson during his hiring interview and denied him the position of Assistant Manager of the IT department, but continued to have Mr. Johnson perform managerial tasks.

39.     On or about late 2001, STS offered company cell phones to Mr. Johnson's similarly situated white employees in the department, but told Mr. Johnson to use his personal cell phone to troubleshoot network problems.

40.     From 2001 through May, 2008, STS intentionally and knowingly maintained a false claim of an inappropriate sexual advancement by Mr. Johnson towards another STS employee, Debbie Reid;  and, STS knowing and intentionally distributed the false claim to STS employees and to federal and state agencies.

41.     Since on or about February 2002, STS assigned Mr. Johnson to a desk positioned so that he could be subjected to closer scrutiny than his similarly situated coworkers; and STS did subject Mr. Johnson to such closer scrutiny.

42.     In 2003, Mr. Antle stated with apparent approval to Mr. Johnson that Fred Marion, President of the Surveillance Reconnaissance Group, made derogatory comments about Jewish people and that Marion "tended to say things like that."

43.     In August, 2003, STS imposed disciplinary action on Mr. Johnson for (non-existent) "insubordination" or "near- insubordination."

44.     Although Mr. Johnson was scheduled to attend a Kepner-Tregoe (KT) workshop in January, 2004, STS denied Mr. Johnson the opportunity to attend and gave his seat to a white coworker.

45.     STS told Mr. Johnson that he would be rescheduled for the next KT workshop, but STS did not so reschedule.

46.     After Mr. Johnson filed a discrimination complaint internally with STS in 2005, STS stated in its response that Mr. Johnson would attend a KT workshop in the future.  However, unlike Caucasian STS employees who would attend KT workshops, Mr. Johnson had to repeatedly beseech HR and file the instant lawsuit before STS finally provided Mr. Johnson with a seat at a KT workshop in 2008.

47.     On or about January, 2004, STS posted Mr. Johnson's job on monster.com, where applicants are solicited for open jobs.

48.     On or about September, 2004, STS did not inform Mr. Johnson of the newly established Professional Development Program (PDP); and, therefore, denied him the opportunity to apply for and attend the program.  However, STS informed one or more of Mr. Johnson's white coworkers of the program.

49.     On or about December 13, 2004, STS chastised and publicly humiliated Mr. Johnson for setting up a luncheon with the members of the IT department at the Tactical division, although STS has not done so to Mr. Johnson's white coworkers who have done what Mr. Johnson did regarding the luncheon.

50.     From 2005 through May 6, 2008, STS continuously set up Mr. Johnson to fail; e.g., regarding Polivec, Cisco ACS Server, Building 60 network, and Orlando network.

51.     On or about July 8, 2005, STS denied Mr. Johnson promotion to the position of IT Supervisor.  Instead, STS promoted Dave Marsden, a white man less qualified than Mr. Johnson, into that position.

52.     On or about July 8, 2005, STS denied Mr. Johnson promotion to the position of Business Systems Supervisor.  Instead, STS promoted Gene Wolf, a white man no more qualified than Mr. Johnson, into that position.

53.     On or about July 8, 2005, STS denied Mr. Johnson promotion to the position of Facility Security Supervisor.  Instead, STS promoted Herman "Bill" Ryan, a white man no more qualified than Mr. Johnson, into that position.

7

54.     In July, 2005, STS denied Mr. Johnson a promotion opportunity with the position of Information Technology Manager at STS Tactical.

55.     In August, 2005, STS wrongly inflicted disciplinary action on Mr. Johnson, and did so because the complainant was white.

56.     Since on or about September, 2005, STS's IT management, in both the Optronics and RSTA divisions, has taken duties and responsibilities from Mr. Johnson and given them to others (i.e., James Veltri, CNI, etc.).

57.     Since on or about September, 2005, STS's IT  management, in both the Optronics and RSTA divisions, has denied Mr. Johnson access to information that was needed for Mr. Johnson's job responsibility of fixing problems on those projects.

58.     In September, 2005, STS denied the opportunity for Mr. Johnson to attend Oracle training, even though Mr. Johnson's need for that training was entered by STS into Mr. Johnson's performance evaluation as a task within the training plan section.  STS did not do so to Mr. Johnson's similarly situated white coworkers.

59.     In September, 2005, Mr. Johnson applied to attend Cisco Intrusion Detection Systems (IDS) online training and was denied by STS, even though this training would have been accomplished on Mr. Johnson's own time.  STS did not do so to Mr. Johnson's similarly situated white coworkers.

60.     In September, 2005, STS denied Mr. Johnson the opportunity to mentor Ms. Reid in (Microsoft) Systems Administration, even though she requested that Mr. Johnson train her, and Mr. Johnson was a Certified Microsoft Trainer (MCT) at that time.  Instead, STS assigned an unqualified white person to train and mentor Ms. Reid in Systems Administration, knowing that the white person was unqualified for the assignment.

61.     On or about October 28, 2005, STS denied Mr. Johnson lead status for the Networking Group and the concomitant raise, even though Mr. Johnson was already recognized and performing as the de facto Lead.

62.     On or about January 14, 2006, STS ordered Mr. Johnson to provide an inaccurate budget.  STS did not order Mr. Johnson's similarly situated white coworkers to do so.

63.     On or about February 16, 2006, STS was discovered to have been scrutinizing every one of Mr. Johnson's computer keystrokes by secretly installing key logging software on Mr. Johnson's work computer.  STS did not scrutinize Mr. Johnson's similarly situated white coworkers nearly so closely.

64.     On or about February 23, 2006, STS ordered Mr. Johnson to unlawfully include the term "STS proprietary data" on a document he wrote about the security problems with the VPN, where the data at issue had already been distributed to the United States government.

65.     Beginning on or about March, 2006, STS suddenly reversed its long-standing practice and refused to provide Mr. Johnson with a modified schedule so that Mr. Johnson could attend college courses.  STS did not deny Mr. Johnson's similarly situated white coworkers such scheduling flexibility.

66.     Beginning on or about March 26, 2006, even though Mr. Johnson repeatedly asked STS Optronics IT management for guidance about handling VPN job requests which seemed to violate the new Corporate VPN policy and informed management how uncomfortable it made him feel to fulfill these request, as well as his uneasiness about being placed in a position for which he could be fired, Optronics management did not respond to his request for guidance.

69.     On or about May, 2006, STS lowered Mr. Johnson's performance evaluation ratings without just cause, and refused to provide any supporting documentation for the reductions.

70.     Beginning on in at least 2002 and continuing through 2008, STS placed false negative entries in Mr. Johnson's performance reviews.

71.     On or about July 11, 2006, STS denied Mr. Johnson permission to take the Notre Dame University Negotiations course, even though the course was online and would have been

9

taken on his own time.  STS did not deny such permission to Mr. Johnson's similarly situated white coworkers.

72.     On or about August 2006, STS denied Mr. Johnson the opportunity to apply for the position of IT Manager at the Dallas facility.

73.     On or about August, 2006, STS employed a white man named Ernie Magnotti for the position IT Manager at the Dallas facility, a position for which Mr. Johnson would have been equally or better qualified than Mr. Magnotti.

74.     On or about October 6. 2006, Mr. Johnson's supervisor  responded with false and inflammatory derogation of Mr. Johnson's job performance when Mr. Johnson had asked the supervisor about working on a Sunday that Mr. Johnson was scheduled off.  STS supervisors did not respond so to Mr. Johnson's similarly situated white coworkers.

75.     On or about October, 2006, STS refused to allow Mr. Johnson to attend a Business Continuity Planning course, even though Mr. Johnson would have been using his own vacation time to attend.  STS did not so deny Mr. Johnson's similarly situated white coworkers.

76.     On or about late 2006, STS engaged in an arbitrary, counterproductive, and unsettling new practice of taking Mr. Johnson's work from him, then suddenly giving the work back to him.  STS did not do so to Mr. Johnson's similarly situated white coworkers.

77.     On or about early 2007, STS (with the collusion of DRS personnel in New Jersey) denied Mr. Johnson the opportunity to join the Corporate Security Team, although Mr. Johnson was equally or better qualified to do so than the white employees STS assigned to the team.

78.     On or about January, 2007, STS failed or refused to respond to Mr. Johnson's multiple objections that he was being adversely and unlawfully singled out, monitored, and harassed by STS.

79.     On or about January 23, 2007, STS denied Mr. Johnson's request to object to STS auditors about possible fraudulent and/or unlawful activities by STS employees.  STS did not deny such permission to white people.

80.     On or about January 26, 2007, STS failed or refused to grant Mr. Johnson's request for a job analysis regarding his job with STS.  STS did not so deny similarly situated white employees.

81.     On or about May, 2007, STS reduced Mr. Johnson's 2007 performance review without just cause.  STS did not do so to similarly situated white employees.

82.     On or about June, 2007, STS refused to officially designate Mr. Johnson as the Supervisor, Manager, or Director of the Florida Data Center Group, even though Mr. Johnson already was performing those functions.

83.     In 2007, STS employed white men, Gary Stevens and Matthew Holder, to perform Network Administration and to perform IT Support, tasks for which Mr. Johnson was better qualified.

84.     On or about October 3, 2007, STS refused to performed a job analysis for Mr. Johnson's new job description, even though STS made new demands on him.  STS did not so deny similarly situated white employees.

85.     On or about November 6, 2007, STS imposed a disciplinary action on Mr. Johnson for an incident involving Script Logic, although STS did not discipline Mr. Johnson's more culpable white coworkers at all, or nearly so harshly.

86.     On or about November, 2007, STS downgraded Mr. Johnson's job position without just cause, from a senior position (Sr. IT Engineer) to a non senior position (Data Center Administrator).  STS did not so downgrade Mr. Johnson's similarly situated white coworkers.

87.     On or about November 28, 2007 STS singled out and placed Mr. Johnson on an unreasonable on-call schedule which was substantially more onerous than the on-call schedule given to his similarly situated white coworker.

88.     During late 2007 through May 6, 2008, STS failed or refused to schedule the class on Project Management for the Professional Development Program that Mr. Johnson was supposed to teach, although STS did not do so to white instructors.

89.     On or about December, 2007, or January, 2008, STS imposed requirements on Mr. Johnson for attending a Kepner-Tregoe workshop that were more onerous than those STS imposed on white attendees;  namely, a five-page paper which was to be a document of self incrimination.

90.     Through May 6, 2008, STS did not provide Mr. Johnson with the certificate to which he was entitled for successfully completing the KT workshop, although STS is believed to have provided similarly situated white attendees with certificates.

91.     On or about March, 2008, STS denied Mr. Johnson access to the Cisco 6513 core switch, even though he required the access to do his job.  STS did not so deny necessary access to similarly situated white employees.

92.     On or about March, 2008, STS denied Mr. Johnson administrative access on the RSTA domain, even though system administration was part of his job requirement.  STS did not so deny necessary access to similarly situated white employees.

93.     On or about April, 2008, STS imposed unwarranted disciplinary action on Mr. Johnson for problems with the "Alabama" Intranet server.  STS did not discipline the similarly situated white employees who were actually responsible for the problem as harshly as STS disciplined Mr. Johnson.

94.     On or about April, 2008, STS imposed unwarranted disciplinary action on Mr. Johnson for problems with the cleanliness of the server room.  STS did not discipline similarly situated white employees who were actually responsible for the problem.

95.     On or about May 4, 2008, STS reduced Mr. Johnson's performance rating to harass and retaliate against him.  STS did not do so to similarly situated white employees.

96.     On or about May 4, 2008, STS imposed a punitive Performance Improvement Plan (PIP) on Mr. Johnson without just cause, and in order to prevent him from applying for the managerial position recently vacated by Marsden.  STS did not do so to similarly situated white employees.

97.     Issues arising from the lack of a job analysis were used by STS against Mr. Johnson during his performance evaluation and PIP, even though STS had failed or refused to provide the analysis when requested to do so by Mr. Johnson.  STS did not treat its white employees in that way.

98.     On or about August 14, 2008, STS suspended Mr. Johnson when he produced digital data in the discovery of this case -- some or all of which STS required that he carry on his person.

99.     On August 28, 2008, STS fired Mr. Johnson.

100.    In August, 2008, an agent of STS overrode the file access dates on a computer memory device, while the device and many of the files were owned by Mr. Johnson.

101.    Beginning August 14, 2008, and continuing through the present, STS has kept Mr. Johnson's personal property that he had located in his workspace at STS.

102.    In relation to similarly situated white people, STS subjected Mr. Johnson to disparate treatment and severe and pervasive harassment, including surreptitious and closer scrutiny, harsher discipline, more onerous standards, withdrawal of resources and support, fewer perquisites and privileges, ostracism and marginalization, disrespect, humiliation, a substantially more hostile working environment, failing or refusing to promote him, and limiting opportunities for promotion to him, because of Mr. Johnson's race.

103.    Under Section 1981, Mr. Johnson has the right to make and enforce contracts -- which includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people.

104.    By committing those acts described in Paragraphs 34 through 102 above, STS discriminated against Mr. Johnson and denied him the same right to make and enforce employment contracts -- which includes the making, performance, modification, and termination

13

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people, because of Mr. Johnson's race.

105. In discriminating against Mr. Johnson because of his race, STS is acting with malice or callous indifference to Mr. Johnson's federally protected rights.

106. Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

107. Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## Count III.  Mr. Grace's Claim of Racial Discrimination in Violation of the Like Punishment Clause
### 42 U.S.C. § 1981

108. Mr. Grace realleges Paragraphs 1 through 26, and states additionally or alternatively:

109. Under Section 1981, Mr. Grace has the right to be subject to punishment, pains, penalties, and exactions of every kind like those to which white people are subjected, and to no other.

110. By committing the actions alleged in Paragraphs 8 through 26 above, STS is subjecting Mr. Grace to punishment, pains, penalties, and exactions of every kind, worse than those to which STS subjects similarly situated white people;  and, STS is doing so because of Mr. Grace's race.

111. In discriminating against Mr. Grace because of his race, STS is acting with malice or callous indifference to Mr. Grace's federally protected rights.

112. Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

14

113.     Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## Count IV.  Mr. Johnson's Claim of Racial Discrimination in
### Violation of the Like Punishment Clause
### 42 U.S.C. § 1981

114.     Mr. Johnson realleges Paragraphs 1 through 6 and 33 through 102;  and states additionally or alternatively:

115.     Under Section 1981, Mr. Johnson has the right to be subject to punishment, pains, penalties, and exactions of every kind like those to which white people are subjected, and to no other.

116.     By committing those acts described in Paragraphs 34 through 102 above, STS is subjecting Mr. Johnson to punishment, pains, penalties, and exactions of kinds worse than those to which STS subjects similarly situated white people;  and, STS is doing so because of  Mr. Johnson's race.

117.     In discriminating against Mr. Johnson because of his race, STS is acting with malice or callous indifference to Mr. Johnson's federally protected rights.

118.     Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

119.     Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## Count V.  Mr. Grace's Claim of Racial Discrimination in
### Violation of the Equal Benefits Clause
### 42 U.S.C. § 1981

120.     Mr. Grace realleges Paragraphs 1 through 26, and states additionally or alternatively:

15

121.    Under Section 1981, Mr. Grace has the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

122.    By committing the actions alleged in Paragraphs 8 through 26 above, STS is denying Mr. Grace the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and STS is doing so because of Mr. Grace's race.

123.    In discriminating against Mr. Grace because of his race, STS is acting with malice or callous indifference to Mr. Grace's federally protected rights.

124.    Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

125.    Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## Count VI.  Mr. Johnson's Claim of Racial Discrimination in Violation of the Equal Benefits Clause 42 U.S.C. § 1981

126.    Mr. Johnson realleges Paragraphs 1 through 6 and 33 through 102, and states additionally or alternatively:

127.    Under Section 1981, Mr. Johnson has the right to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

128.    By committing the actions alleged in Paragraphs 34 through 102 above, STS is denying Mr. Johnson the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and STS is doing so because of Mr. Johnson's race.

129.    In discriminating against Mr. Johnson because of his race, STS is acting with malice or callous indifference to Mr. Johnson's federally protected rights.

16

130.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this

Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to

enjoy life, loss of sense of self-efficacy, and economic damages.

131.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands

all relief that is just and equitable, including compensatory damages, punitive damages, costs,

and attorney fees as provided by 42 U.S.C. § 1988.

### COUNT VII. Mr. Grace's Claim of Section 1981 Retaliation
### 42 U.S.C. § 1981

132.    Mr. Grace realleges Paragraphs 1 through 26, and states additionally or

alternatively:

133.    On or about August, 2005, Mr. Grace filed racial discrimination and retaliation

charges with the United States Equal Employment Opportunity Commission (EEOC) and the

Florida Commission on Human Relations (FCHR).

134.    On or about November, 2005, Mr. Grace filed more charges of racial

discrimination and retaliation with the EEOC and the FCHR.

135.    Mr. Grace's complaints comprised protected activity under 42 U.S.C. § 1981.

136.    At or about the time Mr. Grace engaged in the protected activity, STS was aware

of Mr. Grace's protected activity.

137.    As described in Paragraphs 14 through 26 above, STS took adverse employment

actions against Mr. Grace after STS knew of his protected activity in retaliation for making and

for maintaining the complaints.

138.    A reasonable employee would have found STS's retaliatory actions materially

adverse,  as did Mr. Grace;  i.e. that STS's retaliatory actions against Mr. Grace could well

dissuade a reasonable employee from protected conduct.

139.    By retaliating against Mr. Grace, STS denied Mr. Grace the same right to make

and enforce employment contracts -- which includes the making, performance, modification, and

termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people.

140.    By retaliating against Mr. Grace, STS is subjecting Mr. Grace to punishment, pains, penalties, and exactions of every kind less than those to which STS subjects similarly situated white people; and, STS is doing so because of Mr. Grace's protected activity.

141.    By retaliating against Mr. Grace, STS is denying Mr. Grace the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and STS is doing so because of Mr. Grace's protected activity.

142.    In retaliating against Mr. Grace, STS acted with malice or callous indifference to Mr. Grace's federally protected rights.

143.    Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

144.    Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

## COUNT VIII. Mr. Johnson's Claim of Section 1981 Retaliation
### 42 U.S.C. § 1981

145. Mr. Johnson realleges Paragraphs 1 through 6 and 33 through 102;  and, states additionally or alternatively:

146.    Beginning on or about September, 2005, Mr. Johnson opposed and complained many times to STS in writing about unlawful racial discrimination and retaliation by STS against him.

147.    On or about November 16, 2005, and May 22, 2007, Mr. Johnson opposed and complained to the EEOC and FCHR about unlawful racial discrimination and retaliation by STS against him.

148.    Mr. Johnson's complaints comprised protected activity under 42 U.S.C. § 1981.

18

149.     At or about the time Mr. Johnson engaged in the protected activity, STS was aware of Mr. Johnson's protected activity.

150.     On or about October 27, 2005, Mike Kelly, STS's former Director of Human Resources, and another STS employee attempted to intimidate and harass Mr. Johnson for objecting to unlawful harassment and discipline.

151.     On or about January 14, 2006, STS threatened Mr. Johnson when he objected to being ordered to provide an inaccurate budget.

152.     On or about February, 2006, Mr. Johnson's white manager sent a letter of retaliation and harassment to DRS and to Optronics, but neither DRS nor STS did anything to correct the harassment and retaliation when Mr. Johnson objected to STS about the letter as being unlawful.

153.     On or about February 23, 2006, STS threatened Mr. Johnson with termination of employment if he did not unlawfully include the term "STS proprietary data" on a document he wrote about the security problems with the VPN, and denied him the opportunity to consult with his attorney about the inclusion of the proprietary information.

154.     In May, 2006, STS reduced Mr. Johnson's rating from a 5 to a 3 in the section on integrity;  and, when Mr. Johnson asked his supervisor about the reduction, the supervisor mentioned "lawsuit" and Mr. Johnson's going to "corporate" about the possible violation of the corporate VPN policy.

155.     On or about December 19, 2006, STS threatened to terminate Mr. Johnson's employment soon after he had objected to STS's arbitrary, counterproductive, and unsettling new practice of taking Mr. Johnson's work from him, then suddenly giving the work back to him.

156.     Beginning on or about November 28, 2007 Mr. Johnson objected to STS about the injurious on-call schedule imposed on him by STS as being unlawful.

157.     On or about May 4, 2008, Mr. Johnson objected to STS that some entries in the PIP violated State and Federal laws.

158.    On or about August 14, 2008, STS suspended Mr. Johnson when he produced digital data in the discovery of this case -- some or all of which STS required that he carry on his person.

159.    In August, 2008, an agent of STS overrode the file access dates on a computer memory device, while the device and many of the files were owned by Mr. Johnson.

160.    On August 28, 2008, STS fired Mr. Johnson.

161.    Beginning August 14, 2008, and continuing through the present, STS has kept Mr. Johnson's personal property that he had located in his workspace at STS.

162.    As described in Paragraphs 56 through 102 and 137 through 144 above, STS took adverse employment actions against Mr. Johnson in retaliation for engaging in the protected activity and for maintaining the complaints.

163.    A reasonable employee would have found STS's retaliatory actions materially adverse, as did Mr. Johnson;  i.e. that STS's retaliatory actions against Mr. Johnson could well dissuade a reasonable employee from protected conduct.

164.    By retaliating against Mr. Johnson, STS denied Mr. Johnson the same right to make and enforce employment contracts -- which includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship -- as is enjoyed by white people.

165.    By retaliating against Mr. Johnson, STS is subjecting Mr. Johnson to punishment, pains, penalties, and exactions of every kind less than those to which STS subjects similarly situated white people;  and, STS is doing so because of  Mr. Johnson's protected activity.

166.    By retaliating against Mr. Johnson, STS is denying Mr. Johnson the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens; and, STS is doing so because of  Mr. Johnson's protected activity.

167.    In retaliating against Mr. Johnson, STS acted with malice or callous indifference to Mr. Johnson's federally protected rights.

168.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

169.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

### Count IX.  Mr. Grace's FCRA Claim of Disparate Treatment
### Florida Civil Rights Act of 1992
### Fla. Stat. § 760.01, et seq.

170.    Mr. Grace realleges Paragraphs 1 through 26;  and, states additionally or alternatively:

171.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over this and all other state law claims in this action because these claims arise out of the same nucleus of operative facts as do the federal law claims for which this Court has original jurisdiction.

172.    STS engaged in disparate treatment racial discrimination against Mr. Grace with respect to his compensation, terms, conditions, and privileges of employment, because of his race.

173.    STS's disparate treatment racial discrimination acted to limit, segregate, and/or classify Mr. Grace in ways which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individuals' race.

174.    STS acted with malice or callous indifference to Mr. Grace's rights protected by the Florida Civil Rights Act of 1992 (the FCRA).

175.    With more than 300 employees, STS is a covered employer under the FCRA.

176.    Mr. Grace is a covered employee under the FCRA.

177.    Mr. Grace timely filed his administrative complaints with the FCHR;  and, as more than 180 days and less than four years have elapsed since Mr. Grace's filings with the FCHR, Mr. Grace has exhausted his administrative remedies under the FCRA.

178.    Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

179.    Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

## Count X.  Mr. Johnson's FCRA Claim of Disparate Treatment
### Florida Civil Rights Act of 1992
### Fla. Stat. § 760.01, et seq.

180.    Mr. Johnson realleges Paragraphs 1 through 6, 33 through 102, 171, and 175; and, states additionally or alternatively:

181.    STS engaged in disparate treatment racial discrimination against Mr. Johnson with respect to his compensation, terms, conditions, and privileges of employment, because of his race.

182.    STS's engagement in disparate treatment racial discrimination acted to limit, segregate, and/or classify Mr. Johnson in ways which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individuals' race.

183.    STS acted with malice or callous indifference to Mr. Johnson's rights protected by the FCRA.

184.    Mr. Johnson is a covered employee under the FCRA.

185.    Mr. Johnson timely filed his administrative complaints with the FCHR;  and, as more than 180 days and less than four years have elapsed since Mr. Johnson's filings with the FCHR, Mr. Johnson has exhausted his administrative remedies under the FCRA.

22

186.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

187.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

### Count XI.  Mr. Grace's FCRA Claim of Racial Harassment/Hostile Work Environment
### Florida Civil Rights Act of 1992
### Fla. Stat. § 760.01, et seq.

188.    Mr. Grace realleges Paragraphs 1 through 26, 171, and 175 through 177;  and, states additionally or alternatively:

189.    STS created and allowed a racially discriminatory hostile work environment against Mr. Grace with respect to his compensation, terms, conditions, and privileges of employment, because of his race.

190.    By creating and allowing a racially discriminatory hostile work environment, STS acted to limit, segregate, and/or classify Mr. Grace in ways which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individuals' race.

191.    STS acted with malice or callous indifference to Mr. Grace's rights protected by the FCRA.

192.    Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

193.    Mr. Grace requests all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

**Count XII.  Mr. Johnson's FCRA Claim of Racial Harassment/Hostile**
**Work Environment**
**Florida Civil Rights Act of 1992**
**Fla. Stat. § 760.01, et seq.**

194.    Mr. Johnson realleges Paragraphs 1 through 6, 33 through 102, 171, 175, and 184 through 185;  and, states additionally or alternatively:

195.    STS created and allowed a racially discriminatory hostile work environment against Mr. Johnson with respect to his compensation, terms, conditions, and privileges of employment, because of his race.

196.    By creating and allowing a racially discriminatory hostile work environment, STS acted to limit, segregate, and/or classify Mr. Johnson in ways which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee, because of such individual's race.

197.    STS acted with malice or callous indifference to Mr. Johnson's rights protected by the FCRA.

198.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

199.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

**Count XIII.  Mr. Grace's FCRA Claim of Retaliation**
**Florida Civil Rights Act of 1992**
**Fla. Stat. § 760.01, et seq.**

200.    Mr. Grace realleges Paragraphs 1 through 26, 133 through 138, 171, and 175 through 177;  and, states additionally or alternatively:

201.    Mr. Grace's complaints comprised protected activity under the FCRA.

202. At or about the time Mr. Grace engaged in the protected activity, STS was aware of Mr. Grace's protected activity.

203. As described in Paragraphs 14 through 26 and 133 through 138 above, STS took adverse employment actions against Mr. Grace in retaliation for engaging in the protected activity and for maintaining the complaints.

204. A reasonable employee would have found STS's retaliatory actions materially adverse, as did Mr. Grace; i.e. that STS's retaliatory actions could well dissuade a reasonable employee from protected conduct.

205. In retaliating against Mr. Grace, STS acted with malice or callous indifference to Mr. Grace's rights.

206. Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

207. Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

### Count XIV.  Mr. Johnson's FCRA Claim of Retaliation
### Florida Civil Rights Act of 1992
### Fla. Stat. § 760.01, et seq.

208. Mr. Johnson realleges Paragraphs 1 through 6, 33 through 102, 146 through 163, 185, 189, and 198 through 199;  and, states additionally or alternatively:

209. Mr. Johnson's complaints comprised protected activity under the FCRA.

210. At or about the time Mr. Johnson engaged in the protected activity, STS was aware of his protected activity.

211. As described in Paragraphs 56 through 102 and 146 through 163 above, STS took adverse employment actions against Mr. Grace in retaliation for engaging in the protected activity and for maintaining the complaints.

212.     A reasonable employee would have found STS's retaliatory actions materially adverse,  as did Mr. Johnson;  i.e. that STS's retaliatory actions could well dissuade a reasonable employee from protected conduct.

213.     In retaliating against Mr. Johnson, STS acted with malice or callous indifference to Mr. Johnson's rights.

214.     Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

215.     Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, punitive damages, back pay, interest, costs, and attorney fees as provided by the FCRA, particularly § 760.11.

**Count XV.  Mr. Grace's Claim of Whistleblower Retaliation**
**Florida Whistleblower Act**
**Fla. Stat. § 448.101, et seq**.

216.     Mr. Grace realleges Paragraphs 1 through 26, 133 through 138, 171, 175 through 177, and 201 through 204, and states additionally or alternatively:

217.     Although prohibited by § 448.102(3), STS took retaliatory personnel action against Mr. Grace because he objected to activities, policies, and/or practices of STS which are in violation of laws, rules, and regulations;  e.g., 42 U.S.C. § 1981, Title VII, and the FCRA.

218.     A reasonable employee would have found STS's retaliatory actions materially adverse,  as did Mr. Grace;  i.e. that STS's retaliatory actions could well dissuade a reasonable employee from protected conduct.

219.     In retaliating against Mr. Grace, STS acted with malice or callous indifference to Mr. Grace's rights.

220.     Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

221.    Except for reinstatement, Mr. Grace demands all relief that is just and equitable, including compensatory damages, back pay, interest, costs, and attorney fees as provided by the FWA, particularly § 448.104.

**Count XVI.  Mr. Johnson's Claim of Whistleblower Retaliation**
**Florida Whistleblower Act**
**Fla. Stat. § 448.101, et seq**.

222.    Mr. Johnson realleges Paragraphs 1 through 6, 33 through 102, 146 through 163, and 171,  and states additionally or alternatively:

223.    Although prohibited by § 448.102(3), STS took retaliatory personnel action against Mr. Johnson because he objected to STS activities, policies, and/or practices of STS which are in violation of laws, rules, and regulations;  e.g., 42 U.S.C. § 1981, Title VII, and the FCRA.

224.    A reasonable employee would have found STS's retaliatory actions materially adverse, as did Mr. Johnson;  i.e. STS's retaliatory actions could well dissuade a reasonable employee from protected conduct.

225.    In retaliating against Mr. Johnson, STS acted with malice or callous indifference to Mr. Johnson's rights.

226.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

227.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable, including compensatory damages, back pay, interest, costs, and attorney fees as provided by the FWA, particularly § 448.104.

### COUNT XVII. Mr. Grace's Claim of Conspiracy to Interfere
### with Civil Rights
### against both Defendants
### 42 U.S.C. § 1985(2)

228.    Mr. Grace realleges Paragraphs 1 through 7, 23 through 24, and 158 through 160, and states additionally or alternatively:

229.    Under 42 U.S.C. § 1985(2), Mr. Grace has the right to be free from intimidation by STS as a party and as a witness for his Co-Plaintiff, and to be free of obstruction of justice and intimidation by STS of Mr. Johnson and other witnesses in this federal action against STS.

230.    Managers and agents of DRS and STS conspire to deter, by intimidation and threat, Mr. Grace, Mr. Johnson, and many of Mr. Grace's other witnesses in this District Court of the United States from testifying to matters pending therein, freely, fully, and truthfully, and to injure Mr. Grace and many of his witnesses, in person and property, on account of Mr. Grace and his witnesses having provided testimony in deposition and/or otherwise that is favorable to Mr. Grace and unfavorable to STS.

231.    More specifically, Managers and agents of DRS and STS, including Vicki Coates, Walter Wilinsky, Paka Antle, and Ernie Magnotti met with each other on many occasions from May 7, 2008, through August 14 and 28, 2008, in person and electronically, in the offices of STS in Palm Bay, Florida, and Melbourne, Florida; and, electronically from those locations and DRS's office in Dallas, Texas;  whereupon they agreed to intimidate Mr. Grace by confiscating his property, defaming him, firing him, and defaming and firing Mr. Grace (who also is a witness for Mr. Johnson), and telling STS employees (many of whom are witnesses who already had given deposition testimony favorable to Mr. Grace and unfavorable to STS in this case) not to speak to Mr. Grace.  Also, DRS's and STS's managers and agents, including Vicki Coates, Paka Antle, Ernie Magnotti, and attorneys with the law firm of Ford and Harrison, actively participated in those meetings, and took overt acts in furtherance of the conspiracy, including confiscating Mr. Grace's property, defaming Mr. Grace by falsely stating that he engaged in serious wrongdoing,

firing Mr. Grace, defaming and firing Mr. Johnson, and telling STS's employees/witnesses not to communicate with Mr. Grace.

232.    STS and DRS acted with malice or callous indifference to Mr. Grace's federally protected rights as alleged in this Count.

233.    Mr. Grace has been injured by STS and DRS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

234.    Except for reinstatement, Mr. Grace demands from both Defendants, jointly and severally, all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.

### COUNT XVIII. Mr. Johnson's Claim of Conspiracy to Interfere with Civil Rights against both Defendants 42 U.S.C. § 1985(2)

235.    Mr. Johnson realleges Paragraphs 1 through 6, 33, 23 through 24, and 158 through 160;  and, states additionally or alternatively:

236.    Under 42 U.S.C. § 1985(2), Mr. Johnson has the right to be free from intimidation of himself by DRS and STS as a party and as a witness for his Co-Plaintiff, and to be free of obstruction of justice and intimidation by STS of Mr. Grace and other witnesses in this federal action against STS.

237.    Managers and agents of DRS and STS conspire to deter, by intimidation and threat, Mr. Johnson and many of his witnesses in this District Court of the United States from testifying to matters pending therein, freely, fully, and truthfully, and to injure Mr. Johnson and many of his witnesses, in person and property, on account of Mr. Johnson and Mr. Grace and Mr. Johnson's other witnesses having provided testimony in deposition and/or otherwise, favorable to Mr. Johnson and unfavorable to STS.

238.    More specifically, Managers and agents of DRS and STS, including Vicki Coates, Paka Antle, and Ernie Magnotti met with each other on many occasions from May 7, 2008,

through September, 2008, in person and electronically, in Palm Bay and Melbourne, Florida;

and, electronically from those locations and DRS's office in Dallas, Texas;  whereupon they

agreed to intimidate Mr. Johnson by confiscating his property, defaming him, firing him, and

defaming and firing Mr. Grace (who also is a witness for Mr. Johnson), and telling STS

employees (many of whom are witnesses who already had given deposition testimony favorable

to Mr. Johnson and unfavorable to STS in this case) not to speak to Mr. Johnson.

239.    STS's and DRS's managers and agents, including Vicki Coates, Paka Antle, Ernie

Magnotti, and attorneys with the law firm of Ford and Harrison, actively participated in those

meetings, and took overt acts in furtherance of the conspiracy, including confiscating Mr.

Johnson's property, defaming Mr. Johnson by falsely stating that he engaged in serious

wrongdoing, firing Mr. Johnson, defaming and firing Mr. Grace, and telling STS's

employees/witnesses not to communicate with Mr. Johnson.

240.    STS and DRS acted with malice or callous indifference to Mr. Johnson's federally

protected rights as alleged in this Count.

241.    Mr. Johnson has been injured by STS and DRS as a result of the violations as

alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the

capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

242.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands

from both Defendants, jointly and severally, all relief that is just and equitable, including

compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. §

1988.

### COUNT XIX. Mr. Grace's Claim of Neglect or Refusal to Prevent
### Conspiracy to Interfere with Civil Rights
### against both Defendants
### 42 U.S.C. § 1986

243.    Mr. Grace realleges Paragraphs 1 through 7, 23 through 24, 158 through 160, and

228 through 231; and states additionally or alternatively:

30

244.    Under 42 U.S.C. § 1986 and under the circumstances of Mr. Grace's employment (and termination thereof) with STS, STS and DRS had a duty to prevent Section 1985 conspiracies against Mr. Grace.

245.    DRS and STS, having knowledge that one or more of the wrongs conspired to be done, as alleged in Mr. Grace's section 1985 claim above and being in violation of Section 1985, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do, which DRS and DRS separately could have prevented by the exercise of reasonable diligence.

246.    DRS and STS acted with malice, gross negligence, and/or callous indifference to Mr. Grace's federally protected rights as alleged in this Count.

247.    Mr. Grace has been injured by DRS and STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

248.    Except for reinstatement, Mr. Grace demands from both Defendants, jointly and severally, all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.  In the event of default, Mr. Grace demands $3,000,000.00 in liquidated damages claimed against DRS in this Count only.

### COUNT XX. Mr. Johnson's Claim of Neglect or Refusal to Prevent Conspiracy to Interfere with Civil Rights against both Defendants 42 U.S.C. § 1986

249.    Mr. Johnson realleges Paragraphs 1 through 6, 33, 23 through 24, 158 through 160, and 236 through 239,  and states additionally or alternatively:

250.    Under 42 U.S.C. § 1986 and under the circumstances of Mr. Johnson's employment (and termination thereof) with STS, STS and DRS had a duty to prevent Section 1985 conspiracies against Mr. Johnson.

251.    STS and DRS, having knowledge that one or more of the wrongs conspired to be done, as alleged in Mr. Johnson's section 1985 claim above and being in violation of Section

1985, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused so to do, which DRS and STS separately could have prevented by the exercise of reasonable diligence.

252.    DRS and STS acted with malice, gross negligence, and/or callous indifference to Mr. Johnson's federally protected rights as alleged in this Count.

253.    Mr. Johnson has been injured by DRS and STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

254.    Except possibly for reinstatement under certain conditions, Mr. Johnson demands all relief that is just and equitable from both Defendants, jointly and severally, including compensatory damages, punitive damages, costs, and attorney fees as provided by 42 U.S.C. § 1988.  In the event of default, Mr. Johnson demands $3,000,000.00 in liquidated damages claimed against DRS in this Count only.

## Count XXI.  Mr. Grace's Claim of Conversion

255.    Mr. Grace realleges Paragraphs 1 through 26, and 171;  and, states additionally or alternatively:

256.    Beginning August 14, 2008, and continuing through at least late September, 2008, STS has kept Mr. Grace's personal property that he had located in his workspace at STS.

257.    Mr. Grace values his property, wants his property returned to him, and wants STS not  to possess his property.

258.    Upon information and belief, STS is using or is intending to use Mr. Grace's property against him, and depriving him of the property that would be evidence against STS for violating his rights.

259.    STS has committed acts of dominion wrongfully asserted over Mr. Grace's property inconsistent with his ownership therein.

260.     STS has committed unauthorized acts that deprive Mr. Grace of his property permanently and/or for an indefinite time.

261.     STS acted with malice or callous indifference to Mr. Grace's rights.

262.     Mr. Grace has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

263.     Except for reinstatement, Mr. Grace requests all relief that is just and equitable, including compensatory damages, punitive damages, and the taxable costs of this action.

### Count XXII.  Mr. Johnson's Claim of Conversion

264.     Mr. Johnson realleges Paragraphs 1 through 6, and 171;  and, states additionally or alternatively:

265.     In August, 2008, an agent of STS overrode the file access dates on a computer memory device, while the device and many of the files were owned by Mr. Johnson.

266.     Beginning August 14, 2008, and continuing through the present, STS has kept Mr. Johnson's personal property that he had located in his workspace at STS.

267.     Mr. Johnson values his property, wants his property returned to him, and wants STS not  to possess his property.

268.     Upon information and belief, STS is using or is intending to use Mr. Johnson's property against him, and depriving him of the property that would be evidence against STS for violating his rights.

269.     STS has committed acts of dominion wrongfully asserted over Mr. Johnson's property inconsistent with his ownership therein.

270.     STS has committed unauthorized acts that deprive Mr. Johnson of his property permanently and/or for an indefinite time.

271.     STS acted with malice or callous indifference to Mr. Johnson's rights.

272.    Mr. Johnson has been injured by STS as a result of the violations as alleged in this Count, including pain and suffering, emotional distress, mental anguish, loss of the capacity to enjoy life, loss of sense of self-efficacy, and economic damages.

273.    Except for reinstatement, Mr. Johnson requests all relief that is just and equitable, including compensatory damages, punitive damages, and the taxable costs of this action.

### Demand for Jury Trial

274.    Plaintiffs demand trial by jury on all issues so triable.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of February, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:  Andrew Hament, Att'y, FORD & HARRISON LLP, 1901 South Harbor City Blvd., Suite 501, Melbourne, FL 32901.

Respectfully submitted by:


s/  Mark E. Tietig
Mark E. Tietig, Trial Counsel
Fla. Bar No. 105465
Tietig & Tietig, P.A.
6065 South Tropical Trail
Merritt Island, FL 32952
(321) 452-9944
Facsimile: (321) 452-8942
mt@tietig.com
Attorney for Plaintiffs